# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, D.C. 20507**

# COMMISSIONER CHARGE

Pursuant to § 706(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., I issue this Commissioner charge against the following employer:

Hyundai ENG America, Inc.
Headquarters: 111 Peters Canyon Road, Irvine, CA 92606

I believe that the above employer is within the jurisdiction of the Equal Employment Opportunity Commission. I further believe that since at least 2023, the above employer may have engaged in unlawful employment practices based on national origin, including:

1. Failing or refusing to hire non-Korean individuals for its operations in Alabama and Georgia.

2. Failing or refusing to promote non-Korean individuals for its operations in Alabama and Georgia.

I, Charlotte A. Burrows, declare under penalty of perjury, that the foregoing is, to the best of my knowledge and belief, true and correct.

Executed this 2nd day of December 2024.

[signature]

Chair
U.S. Equal Employment Opportunity Commission

EEOC Form 136
(11/09)

# UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# SUBPOENA

TO: Juhyun Yun
Chief Executive Officer
Hyundai ENG America, Inc.
111 Peters Canyon Road
Irvine, California 92606

NO: AT-26-007

IN THE MATTER OF: Charlotte A. Burrows v. Hyundai ENG America, Inc.

Charge No. 410-2025-02613

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☐ Testify before: ☒ Produce and bring * or ☒ Mail * the documents described below to:

☐ Produce access to the evidence described below for the purpose of examination or copying to:

Trey Andrew Pyle, Senior Federal Investigator of the Equal Employment Opportunity Commission

at 100 Alabama Street SW, Suite 4R30, Atlanta, GA 30303 on February 13, 2026 at 5:00pm o'clock

The evidence required is

Section I – Electronic Data Requested

A. Submit in electronic format, as described below in Section II, the following data as it relates to all current and former employees employed at Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This information includes employees' complete employment history going back to date of hire. For each employee, provide all populated fields in each of the names/files listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

a. Last name, First name
b. Self-service access
c. Employee #

CONTINUED ON PAGE 3 of Form 136

This subpoena is issued pursuant ☒ (Title VII) 42 U.S.C. 2000e-9 ☐ (ADEA) 29 U.S.C. 626(a) ☐ (EPA) 29 U.S.C. 209 ☐ (ADA) 42 U.S.C. 12117(a) ☐ (GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)
Darrell E. Graham, District Director
EEOC - Atlanta District Office
100 Alabama Street SW
Suite 4R30
Atlanta, GA 30303

ON BEHALF OF THE COMMISSION

Darrell E. Graham Digitally signed by Darrell E. Graham Date: 2026.02.02 09:18:23 -05'00'

Date

*NOTICE TO PERSON SUBPOENAED - The Commission will not pay witness fees or travel expenses for the delivery of required documents to a Commission office unless the box "Testify before" is also checked on the subpoena.

# SUBPOENA

## PROOF OF SERVICE

I hereby certify that being over 18 years of age and not a party to or any way interested in these proceedings, I duly served a copy of the subpoena on the persons named in this subpoena.

☐ in person

☐ by certified mail

☐ by leaving a copy with a responsible person, at the principal office or place of business, to wit:

Name ________________________________________

Position ________________________________________

Address ________________________________________

On ________________________________________

*(Mo, day & year)*

________________________________________

*(Signature of person making service)*

________________________________________

*(Official title, if any)*

State ________________________________________

Parish/ County ________________________________________

## CERTIFICATION OF ATTENDANCE

I certify that the person named herein was in attendance and satisfactorily produced the records requested or gave oral testimony at

________________________________________

On ________________________________________

*(Mo, day & year)*

________________________________________

*(Signature of person making service)*

________________________________________

*(Official title, if any)*

SUBPOENA

Attachment to Subpoena AT-26-007 Dated ____________ in Charge No. 410-2025-02613

d. Status
e. First Name
f. Middle Name
g. Last Name
h. Birth Date
i. SSN
j. Citizenship
k. Nationality
l. Address Line 1
m. Address Line 2
n. City
o. State
p. Zip Code
q. Country
r. Mobile Phone
s. Home Phone
t. Home Email
u. Visa: Date
v. Visa
w. Issuing country
x. Hire Date
y. Original Hire Date
z. Ethnicity
aa. EEO Job Category
bb. Employment Status: Date
cc. Employment Status
dd. Termination Type
ee. Termination Reason
ff. Pay Schedule
gg. Pay Type
hh. Pay Rate

CONTINUED ON PAGE 4 of Form 136

On Behalf of the Commission:

Darrell E. Graham Digitally signed by Darrell E. Graham Date: 2026.02.02 09:18:49 -05'00'

District Director Date

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated _______ in Charge No: 410-2025-02613

B. Respondent indicated in their supplemental response to the January 25, 2025 Request for Information, dated September 9, 2025, that applicant data is unable to be exported in an Excel or similar spreadsheet. If the statement regarding Respondent's inability to export data was made in error, we request that Respondent submit in electronic format, as described below in Section II, the following data as it relates to all applicants who applied to any of Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This includes *all applicant history going back to date of application for each application*. For each applicant, provide all populated fields in each of the names/fields listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

a. Candidate or Applicant ID
b. Application ID
c. Date Applied
d. Full Name
e. Email Address
f. Home Address
g. Phone Number
h. Position Applied For
i. Division
j. Department
k. Location
l. Current/Former Employee
m. EEO Category
n. Race/Ethnicity
o. National Origin
p. Visa
q. Issuing Country
r. Highest Education Obtained
s. Hire Date
t. Candidate Ranking

C. If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions. Please reach out to the investigator to provide details regarding the person most knowledgeable and availability for the interview.

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated ________ in Charge No: 410-2025-02613

**Section II – Formatting and Transferring Electronic Data Files**

**A. Data File Format**

The requested data should be extracted into one of the following file formats: Microsoft Excel, Microsoft Access, or ASCII comma delimited ("csv"). Other formats may be acceptable if approved prior to submission to the EEOC. Please contact me for assistance if you cannot provide data in one of the requested formats.

**B. Field Names and Unique identifiers**

Each field requested above should be provided in a unique column. The EEOC requests that the first row of each data file (or Excel worksheet or Access table) consists of the field names.

It is required that each data file (or worksheet or table) contain a unique identifier for each person or individual represented in the data. The unique identifier should allow information about individuals to be linked across files, tables, and software systems. While Social Security Number is a common unique identifier, EEOC's preference is to have another identifier if it exists. That is, as an extra guard to protect the confidentiality/privacy of individuals in the data, EEOC prefers not to receive Social Security Numbers if alternative unique identifiers (such as employee, applicant, or badge numbers) are available. Each data table produced containing information about individuals must include an employee ID and applicant ID, where applicable, unless the Respondent can specify some other unique and consistent identifiers for these purposes. If a unique identifier does not already exist that links candidate/applicant data to employee data, as well as any other applicant tracking system or human resource information systems used, you are required to assign a unique identifier for the same person in all the tables.

**C. Field and Code Definitions**

For each data file (or worksheet or table) produced, provide a list of definitions for each field or variable included. Also provide a list of all possible code values and definitions for each field or variable that contains a code to capture individual information (for example, a field SEX may include codes "M" or "1" for male and "F" or "2" for female). Field and code definitions should be provided in Microsoft Excel or Word readable format.

**D. Data Transfer**

Protecting the confidentiality and privacy of individuals and employers in the data is of utmost importance to the EEOC. The safest and securest way to transfer sensitive personally identifiable information (SPII) data to EEOC is to transfer via the EEOC's Respondent Portal. *Do not email data to the EEOC. This is not a secure method of data transfer.* If data transfer is not possible through the Respondent Portal, please contact the assigned investigator to discuss alternative options for data transfer.

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated ________ in Charge No: 410-2025-02613

**Transferring data via the Respondent Portal**

Include a written transmittal memorandum that includes the following:

a. Who is sending the data, who is to receive the data, and the reason that the data is being transmitted, and
b. A description of the contents including the names of each database file, the number of bytes contained in each file, and a log of any queries used to export or import the data.

Log in to the EEOC Respondent Portal at: https://nxg.eeoc.gov/rsp/login.jsf

- Provide the Charge Number.
- Provide Password.
  - If you forgot your password, click on the "change password" or "forgot password" button in the log in window. Once you have done this, it will take you to the next window where you must fill out all the form fields and submit them by selecting the "change password" button. Keep in mind, the "forgot password" link will only work if the email entered matches the contact email for that case. If you need further assistance, please contact the helpdesk at 800-569-7118 or via email at digitalsupport@eeoc.gov.

When you are in the Respondent Portal:

- Provide or verify Organization Contact Information.
- Click the "Upload Documents" button under Charge Documents in the right panel.
- Choose the file(s) to upload.
- If the data contain SPII or a file is larger than 50 MB, select the "Sensitive Data Set" File Type (examples of SPII include: Name, Social Security Number, Driver's License, Financial Account or Credit/Debit Account Number, medical information).
- If the data contain SPII, check the "SPII" checkbox.
- If the data contain SPII, check the types of SPII information that the data contain.
- Click the "Save Upload" button.

Outlook

**[External] Wayne Evans has sent you a package**

**From** Wayne Evans <no-reply@stamps.com>
**Date** Mon 2/2/2026 11:39 AM
**To** TREY PYLE <TREY.PYLE@EEOC.GOV>

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Stamps.com

This message was sent to you at the request of Wayne Evans, to notify you that they have shipped a package to you. For details about your shipment or to track your package, please refer to the information below.

**Shipment Details**

| | |
|---|---|
| **Shipped To:** | Juhyun Yun/CEO<br>Hyundai ENG America, Inc., 111 Peters Canyon Rd Irvine CA 92606-1790 US |
| **Mailing Date:** | 2/2/2026 |
| **Est. Delivery:** | 1 - 3 days |
| **Service:** | First Class (R) |
| **Signature:** | Required |
| **Tracking:** | 9414811899561917376911 |

The shipment information contained in this email is provided by Stamps.com. For questions about this package, please contact Wayne Evans or U.S. Postal Service.

Easily print USPS shipping labels from your PC or Mac. At Stamps.com, our goal is to simplify shipping so you can focus on your business. Get started at www.stamps.com.

**T. Matthew Miller**
Partner
mmiller@bradley.com
205.521.8243 direct
205.218.5047 cell
205.488.6243 fax

February 6, 2026

**VIA ELECTRONIC MAIL and U.S. MAIL**

Andrea Lucas, Chair
U.S. Equal Employment Opportunity Commission
131 M Street NE
Washington, DC 20507
Andrea.Lucas@eeoc.gov

Darrell E. Graham, District Director
EEOC - Atlanta District Office
100 Alabama Street SW, 4r30
Atlanta, GA 30303
Darrell.Graham@EEOC.gov

Andrew Rogers, Acting General Counsel
U.S. Equal Employment Opportunity Commission
131 M Street NE
Washington, DC 20507
Andrew.Rogers@EEOC.gov

RE: **Petition for Revocation and Objections to Administrative Subpoena by Former Commissioner Burrows**
*Charlotte A. Burrows v. Hyundai ENG America, Inc.*
EEOC Charge No. 410-2025-02613

Dear District Director Graham, General Counsel Rogers, and Chair Lucas:

Pursuant to 29 C.F.R. § 1601.16(3), Respondent Hyundai ENG America, Inc. ("Respondent") petitions for revocation of, and objects to the Equal Employment Opportunity Commission's subpoena dated February 2, 2026 ("Subpoena") (See copy at Attachment A). The Commission now having a quorum, Respondent also renews its request for withdrawal of this Charge filed by former Commissioner Charlotte Burrows.

The Subpoena is the continuation of a fishing expedition originating from a Charge filed by former Commissioner Burrows on the eve of her termination. (See Attachment B). Former Commissioner Burrows, directly contrary to the directives and initiatives of the current Administration, was focused on investigating and challenging the use of artificial intelligence in hiring processes under a disparate impact theory of discrimination. She is an unabashed opponent of *Executive Order 14281* ("It is the policy of the United States to eliminate the use of disparate-impact liability in all contexts to the maximum degree possible . . . all agencies shall deprioritize enforcement of all statutes and regulations to the extent they include disparate-impact liability.")

Consistent with her mission, Burrows's Charge against HEA does not cite any evidence of discrimination by HEA but is instead founded on pure conjecture, with the hope that far reaching discovery will support her disparate impact theory.

Respondent formally requested withdrawal of the Charge by the Commission (pre-quorum), but instead of a response, Respondent received a subpoena issued by the Atlanta District Office seeking a broad range of information about Respondent's HRIS platform. When Respondent sought revocation of that subpoena, it received a denial of its petition that was not issued or signed by the Commission as required by federal law, but instead issued and signed by a director, purportedly on behalf of the Commission, which at the time was without a quorum. Respondent questions whether the prior petition was presented to the Commission and is thus copying Chair Lucas on this Petition. Respondent respectfully requests that the Commission grant this Petition, revoke the Subpoena, and withdraw the Charge.

## PETITION FOR REVOCATION AND PRECAUTIONARY OBJECTIONS TO SUBPOENA

### PETITION FOR REVOCATION

The basis for this Petition is best understood starting with a timeline of the events leading to the Petition.

- December 2, 2024. Former Commissioner Charlotte Burrows issues a charge of discrimination ("Charge") against Respondent in which she cited no evidence of discrimination. The Charge is based entirely on Burrows's purported "belie[f]" that Respondent "may have" engaged in unlawful employment practices." Burrows cites no factual basis for the Charge and relies upon pure conjecture. There is no identification of, or reference to, a single employee or applicant who alleges discrimination by Respondent.
.
- January 23, 2025. President Trump issues Executive Order 14179, entitled "Removing Barriers to American Leadership in Artificial Intelligence," rescinding a prior Executive Order by the Biden Administration (14110) which supported AI-based disparate impact actions. EO 14179 directs the heads of relevant agencies, to identify any actions inconsistent with its purpose and to "suspend, revise, or rescind such actions, or propose suspending, revising, or rescinding such actions."

- January 27, 2025. President Trump removes Commissioner Burrows. The EEOC also removed its AI disparate impact guidance from its website.

- January 28, 2025. The very next day after the guidance was removed, the Atlanta District Office issues a wide-ranging request for information seeking five years of data from Respondent in relation to Burrows's charge. In contravention of the current Commission policy and objectives, the RFI stated that the Commission is interested in learning about Respondent's Applicant Tracking System and Human Resource Information System (HRIS) used to track information about applicants and employees. The RFI focused on a

"Description of Data-Driven Algorithms, Artificial Intelligence, or Machine Learning Used for Recruitment, Screening, Selection and/or Promotion."

- February 28, 2025. Respondent, through counsel, requests a review and withdrawal of the Charge by the Commission pursuant to its authority under 29 C.F.R. §1601.11(b) (Permitting withdrawal of a Commissioner Charge filed by a former Commissioner where the "purposes of Title VII, the ADA, GINA, or the PWFA are no longer served by processing the charge.") As the Commission did not have a quorum at the time, Respondent asked that in the interim the investigation of the Charge be stayed until the Commission could obtain a quorum and reconsider the Charge. (See Attachment C).

- April 10, 2025. EEOC investigator emails counsel for Respondent stating that the Acting General Counsel was in receipt of the February 28, 2025, letter, but the investigator had "not received any instruction to deviate this investigation from its normal course." (See Attachment D).

- April 16, 2025. Counsel for Respondent against asks for a substantive response to its February 28, 2025, letter, noting that a lack of communication within the Commission should not justify burdening Respondent with responding to an improper charge. (Attachment D).

- May 12, 2025. Despite having provided no substantive response to Respondent's February 28, 2025, letter, the investigator issues a document subpoena to Respondent parroting the broad requests in the RFI. (Attachment E).

- May 19, 2025. Respondent submits a Petition for Revocation and General Objections to Subpoena. (Attachment F).

- July 8, 2025, Respondent received a "Determination" denying its petition for revocation. The "Determination" provided no substantive evidentiary or legal basis for the pursuit of the Charge or information requested. The "Determination" was signed by Thomas Colclough who identified himself in the Determination as "Director Office of Field Programs." 29 CFR § 1601.16(b)(2) requires that if a proposed determination is made by a Director, the petition for revocation and proposed Determination must be submitted to the Commission for its review and final determination and the Commission must then serve its final determination on the petitioner. Mr. Colclough signed the Determination "On Behalf of the Commission;" however, he was not and is not a Commissioner. Indeed, the Commission lacked a quorum at the time and thus could not have issued the Determination. The Commission obviously did not review, bless, or send the proposed Determination as it did not have a quorum. As required steps did not occur during the petition review process the Determination was invalid as a matter of law. (Attachment G).

- August 25, 2025. Despite the invalid Determination, and to put an end to the pursuit of this orphaned charge, Respondent cooperated with the EEOC's underlying request for information regarding its HRIS systems. Respondent provided, subject to its previously

articulated objections, the information the EEOC requested in its request for information regarding its HRIS systems. The information provided showed that there is no basis to continue pursuit of Burrows's Charge.

- August 27, 2025. The investigator sends a request to Respondent for yet additional information.

- September 9, 2025. Subject to its objections, and again to cooperate and illustrate the lack of basis for the Charge, Respondent provided detailed information that showed that there is no evidentiary basis to support the Charge. Respondent does not use AI in the hiring or promotion process and the requested samples provided showed that Respondent hires individuals of all races and national origins.

- December 15, 2025. The EEOC issues a second wide-ranging request for information, this time seeking a broad scope of documents for every employee of Respondent in Alabama and Georgia spanning a period of six years (despite the Charge only referring to possible discrimination dating to 2023).

- January 20, 2026. Respondent objects to the second request for information. (Attachment H).

- February 2, 2026. The Atlanta District Office serves another subpoena demanding production of the requested documents, citing no evidentiary basis for its continued investigation of the improper Charge. (Attachment A).

REASONS FOR THIS PETITION:

1. The EEOC should revoke the subpoena and withdraw the Charge.

The Commission should revoke the Subpoena because it is premature. On February 28, 2025, having received a request for information from EEOC investigator Trey Pyle, counsel for Respondent wrote the Acting General Counsel requesting that the EEOC review this matter and withdraw the Charge pursuant to its authority under 29 C.F.R. § 1601.11(b) (permitting withdrawal of a Commissioner Charge filed by a former Commissioner where the "purposes of Title VII . . . are no longer served by processing the charge."). In the alternative, Respondent requested that the Charge be dismissed pursuant to the Commission's inherent authority to process and dismiss charges. Given that the Commission did not have a quorum, Respondent asked in the interim that the investigation of this Charge be stayed pending the Commission's reconsideration of the Charge. This request was appropriate, particularly given that Commissioner Burrows, who issued the Charge, was removed by the President shortly after issuing the Charge on her own behalf, and because processing the Charge no longer serves the purposes of Title VII of the Civil Rights Act and, in fact, runs directly counter to the priorities of the current Administration and the current Commission. The Charge also creates an undue burden on Respondent, which has built multiple manufacturing facilities in the states of Alabama and Georgia to the benefit of thousands of American workers and the communities where they live.

In lieu of responding to Respondent's communication, investigator Pyle, who was copied on the correspondence to Acting EEOC General Counsel Rogers, responded by emailing counsel for Respondent demanding a response to the request for information and threatened that "the subpoena language at the end of the January 28, 2025 request for information . . . will be enforced upon non-compliance."

In reply, counsel for Respondent inquired whether Respondent could expect a response to its letter to the Acting General Counsel's office and noted the request for a stay pending a response. Investigator Pyle answered that the "Atlanta District Office is in receipt of your February 28, 2025, letter to Acting General Counsel Rogers" and that "Acting General Counsel Rogers is aware of your letter. At this time, however, we have not received any instruction to deviate this investigation from its normal course."

When counsel for Respondent then respectfully insisted upon a substantive response to its February letter or at least a phone call, noting that lack of communication within the Commission should not justify burdening Respondent with responding to an improper charge, the Atlanta District Office's response was to send a subpoena. Respondent, to show good faith and illustrate the lack of basis for the Charge, cooperated with the EEOC's requests for information, while preserving its objections. Despite no basis for continuing the pursuit of this Charge, Respondent's efforts were rewarded with a second request for information and now this Subpoena.

Given the nature of the Charge, Ms. Burrows's lack of standing to continue pursuit of her charge, the change in administration, and the lack of a quorum at the Commission, Respondent's request for withdrawal of the Charge was reasonable. Failing to respond to Respondent's correspondence and instead issuing two subpoenas was not. Respondent respectfully requests that the Commission review Burrows's Charge and withdraw it. In the interim, revocation of the Subpoena is appropriate.

2. The Charge was issued by a former Commissioner who was terminated by the President of the United States.

A revocation of the Subpoena pending reconsideration of the Charge by the Commission is necessary because the Charge was issued by a former Commissioner who was terminated by the President of the United States and whose objectives are not in alignment with the current Administration. Commissioner Burrows was removed from the Commission by President Trump on January 27, 2025. The Charge she filed just a month before her removal is vague and non-specific, failing to provide the Respondent with information as to the origin of the complaint or how it is alleged to be discriminating against certain applicants and employees. (Attachment B, Commissioner Charge). Therefore, it is unclear why she instituted this matter, but it is evident that her enforcement priorities did not comport with the priorities of the current Administration, leading to her removal. As such, it is reasonable to conclude that investigations initiated by Ms. Burrows—particularly where, as here, the Charge is vague and non-specific—diverge from the current Administration's priorities. Moreover, Ms. Burrows lacks standing to pursue the Charge. A Charge may be pursued by an aggrieved individual or a commissioner. Ms. Burrows is neither. As a former Commissioner, Ms. Burrows, in whose name the Charge is being pursued, has no standing to pursue the Charge. As such, the EEOC should either dismiss the Charge outright or review the

Charge to determine if it intends to continue to pursue it despite the directives of the current Administration addressed below. In the interim, Respondent requests revocation of the Subpoena.

3. The requests in the Subpoena are contrary to the directives and initiative of the President of the United States.

As addressed in Respondent's February correspondence to the Acting General Counsel, the Charge is vague and non-specific and diverges from the current Administration's priorities. In addition, the substance of the requests in the subpoena issued in this matter clearly follow prior EEOC guidance, which has been rescinded. Specifically, in May 2023, the EEOC issued guidance on the use of Artificial Intelligence ("AI") by employers to avoid disparate impact. (EEOC Title VII Violations for Use of Algorithmic AI Hiring). However, on January 23, 2025, President Trump issued Executive Order 14179, entitled "Removing Barriers to American Leadership in Artificial Intelligence," which rescinded a prior Executive Order of the Biden Administration. (Removing Barriers to American Leadership in Artificial Intelligence – The White House). The Executive Order directs the heads of relevant agencies to review with the APST, the Special Advisor for AI and Crypto, and the APNSA, all policies, actions and orders taken pursuant to revoked Biden Executive Order 14110 (Safe, Secure, and Trustworthy Development and Use of Artificial Intelligence) and to suspend, revise or rescind actions that are inconsistent with or present obstacles to Executive Order 14179.

As a result of this new Executive Order, the EEOC removed its AI disparate impact guidance from its website on January 27, 2025. (Page not found | U.S. Equal Employment Opportunity Commission). However, the very next day after the guidance was removed, the investigator in the instant case issued an RFI to Respondent, upon which the requests in the Subpoena are based. Despite the EEOC's change in position on Artificial Intelligence, the requests within the Subpoena are primarily focused on the use of AI.[1] Therefore, the investigation of this Charge, and the resulting Subpoena, are clearly contrary to the priorities of current Commission policy. The failure of the Commission to review the Burrow's Charge and to revoke the Subpoena in the interim is contrary to the directives of the President.

On April 23, 2025, President Trump issued an Executive Order entitled "Restoring Equality of Opportunity and Meritocracy," which provides that the policy of the United States is to eliminate the use of disparate impact liability in all contexts to the maximum degree possible, explaining that "disparate impact liability has hindered businesses from making hiring and other employment decisions based on merit and skill, their needs, or the needs of their customers because of the specter that such a process might lead to disparate outcomes, and thus disparate-impact lawsuits." "This has made it difficult, and in some cases impossible, for employers to use bona fide job-oriented evaluations when recruiting, which prevents job seekers from being paired with

[1] The remaining requests within the Subpoena seek detailed and voluminous information regarding Respondent's applicants and employees spanning a period of six years – a period greater than any potential statute of limitations. The subpoenas issued in this case are the epitome of a legal "fishing expedition." The first Subpoena explained that the requests are broad because the Commission wishes to first learn about Respondent's processes and then will follow up with additional requests. However, this staggered approach further demonstrates the broad and non- specific nature of the allegations made by former Commissioner Burrows, whose enforcement priorities were not consistent with current policy and guidance. Further, such a "fishing expedition" is not only a waste of government resources but is fundamentally unfair and an undue burden upon Respondent.

jobs to which their skills are most suited — in other words, it deprives them of opportunities for success." The Subpoena's focus on the (incorrectly) presumed use of AI by Respondent pursues a disparate impact theory of liability as the use of such tools does not support a theory of intentional bias.

For the foregoing reasons, Respondent respectfully requests that the Commission revoke the Subpoena and withdraw Charge No. 410-2025-02613.

**OBJECTIONS TO INDIVIDUAL REQUESTS IN THE ADMINISTRATIVE SUBPOENA**

If the Commission does not revoke its request or withdraw the Charge as requested by Respondent, Respondent objects to the individual requests in the February 2, 2026, Subpoena as follows:

**THE EEOC'S SUBPOENA REQUESTS THE FOLLOWING:**

*Section I – Electronic Data Requested*

*A. Submit in electronic format, as described below in Section II, the following data as it relates to all current and former employees employed at Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This information includes employees' complete employment history going back to date of hire. For each employee, provide all populated fields in each of the names/files listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.*

*a. Last name, First name*

*b. Self-service access*

*c. Employee #*

*d. Status*

*e. First Name*

*f. Middle Name*

*g. Last Name*

*h. Birth Date*

*i. SSN*

*j. Citizenship*

*k. Nationality*

*l. Address Line 1*

*m. Address Line 2*

*n. City*

*o. State*

*p. Zip Code*

*q. Country*

*r. Mobile Phone*

*s. Home Phone*

*t. Home Email*

*u. Visa: Date*

*v. Visa*

*w. Issuing country*

*x. Hire Date*

*y. Original Hire Date*

*z. Ethnicity*

*aa. EEO Job Category*

*bb. Employment Status: Date*

*cc. Employment Status*

*dd. Termination Type*

*ee. Termination Reason*

*ff. Pay Schedule*

*gg. Pay Type*

*hh. Pay Rate*

*ii. Job Information: Date*

*jj. Location*

*kk. Division*

*ll. Department*

*mm. Job Title*

*B. Respondent indicated in their supplemental response to the January 25, 2025 Request for Information, dated September 9, 2025, that applicant data is unable to be exported in an Excel or similar spreadsheet. If the statement regarding Respondent's inability to export data was made in error, we request that Respondent submit in electronic format, as described below in Section II, the following data as it relates to all applicants who applied to any of Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This includes all applicant history going back to date of application for each application. For each applicant, provide all populated fields in each of the names/fields listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.*

*a. Candidate or Applicant ID*

*b. Application ID*

*c. Date Applied*

*d. Full Name*

*e. Email Address*

*f. Home Address*

*g. Phone Number*

*h. Position Applied For*

*i. Division*

*j. Department*

*k. Location*

*l. Current/Former Employee*

*m. EEO Category*

*n. Race/Ethnicity*

*o. National Origin*

*p. Visa*

*q. Issuing Country*

*r. Highest Education Obtained*

*s. Hire Date*

*t. Candidate Ranking*

*C. If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions. Please reach out to the investigator to provide details regarding the person most knowledgeable and availability for the interview.*

*Section II – Formatting and Transferring Electronic Data Files*

*A. Data File Format*

*The requested data should be extracted into one of the following file formats: Microsoft Excel, Microsoft Access, or ASCII comma delimited ("csv"). Other formats may be acceptable if approved prior to submission to the EEOC. Please contact me for assistance if you cannot provide data in one of the requested formats.*

*B. Field Names and Unique identifiers*

*Each field requested above should be provided in a unique column. The EEOC requests that the first row of each data file (or Excel worksheet or Access table) consists of the field names.*

*It is required that each data file (or worksheet or table) contain a unique identifier for each person or individual represented in the data. The unique identifier should allow information about individuals to be linked across files, tables, and software systems. While Social Security Number is a common unique identifier, EEOC's preference is to have another identifier if it exists. That is, as an extra guard to protect the confidentiality/privacy of individuals in the data, EEOC prefers not to receive Social Security Numbers if alternative unique identifiers (such as employee, applicant, or badge numbers) are available. Each data table produced containing information about individuals must include an employee ID and applicant ID, where applicable, unless the Respondent can specify some other unique and consistent identifiers for these purposes. If a unique identifier does not already exist that links candidate/applicant data to employee data, as well as any other applicant tracking system or human resource information systems used, you are required to assign a unique identifier for the same person in all the tables.*

*C. Field and Code Definitions*

*For each data file (or worksheet or table) produced, provide a list of definitions for each field or variable included. Also provide a list of all possible code values and definitions for each field or variable that contains a code to capture individual information (for example, a field SEX may include codes "M" or "1" for male and "F" or "2" for female). Field and code definitions should be provided in Microsoft Excel or Word readable format.*

*D. Data Transfer*

*Protecting the confidentiality and privacy of individuals and employers in the data is of upmost importance to the EEOC. The safest and securest way to transfer sensitive personally identifiable information (SPII) data to EEOC is to transfer via the EEOC's Respondent Portal. Do not email data to the EEOC. This is not a secure method of data transfer. If data transfer is not possible through the Respondent Portal, please contact the undersigned to discuss alternative options for data transfer.*

*Transferring data via the Respondent Portal*

*Include a written transmittal memorandum that includes the following:*

*a. Who is sending the data, who is to receive the data, and the reason that the data is being transmitted, and*

*b. A description of the contents including the names of each database file, the number of bytes contained in each file, and a log of any queries used to export or import the data.*

*Log in to the EEOC Respondent Portal at: https://nxg.eeoc.gov/rsp/login.jsf*

• *Provide the Charge Number.*

• *Provide Password.*[1]

## OBJECTION TO SUBPOENA REQUESTS

### OBJECTIONS TO SECTION I – A Electronic Data Requested

Respondent adopts and incorporates here each of its objections cited in response to the Charge, the EEOC's initial request for information and the EEOC's subpoena. The requests in Section 1 confirm that the requests for additional information are an ongoing "fishing expedition." In Section I of its initial request for HRIS information, the EEOC admitted that the requests were broad and confirmed that the Commission wished to first learn about Respondent's processes and then will follow up with additional requests. Consistent with that admission, the EEOC has now issued grossly overbroad requests for documentation. Respondent objects because such continued requests are not grounded on any factual or evidentiary basis and instead are simply an effort by the EEOC to see if it can find anything that it can pursue against Respondent. The requests are not only a waste of government resources, but also fundamentally unfair and an undue burden upon Respondent. The requests establish that Ms. Burrows lacked evidence upon which to base her Charge and was simply digging to see what she might uncover that conflicted with her agenda.

This is not the proper basis for a Charge and supports Respondent's objections to the overbroad, vague, and irrelevant nature of the requests in the Subpoena.

**OBJECTIONS TO SECTION 1 -A ELECTRONIC INFORMATION**

The EEOC requests that Respondent submit in electronic format, as described in Section II, dozens of data points relating to *every current and former employee who worked for Respondent in Alabama and Georgia for a period of six years* dating back to January 1, 2020. This information requested includes every employee's *complete employment history going back to date of hire* and for each employee, seeks production of all populated fields in each of the names/files listed from the BambooHR system.

Respondent objects to this request because the EEOC, despite requests to do so, has provided no basis to establish that the requested information is relevant or even reasonably calculated to lead to the discovery of admissible evidence. The request is a gross overreach without any basis. The request is overly broad as it seeks not only data unrelated to any claim the EEOC could pursue but also data that is outside the statute of limitations of any claim the EEOC could pursue on behalf of employees. The request is also unduly burdensome.

**OBJECTIONS TO SECTION I- B**

In Section I-B, the EEOC requests as follows:

> B. Respondent indicated in their supplemental response to the January 25, 2025, Request for Information, dated September 9, 2025, that applicant data is unable to be exported in an Excel or similar spreadsheet. If the statement regarding Respondent's inability to export data was made in error, we request that Respondent submit in electronic format, as described below in Section II, the following data as it relates to all applicants who applied to any of Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This includes all applicant history going back to date of application for each application. For each applicant, provide all populated fields in each of the names/fields listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

Respondent incorporates its objections in Section 1-A and objects to the request for data on all applicants to its Alabama or Georgia locations for a period of six years, dating to 2020 as such a request exceeds the statute of limitations as to any claim the EEOC could pursue on behalf of employees or applicants. The request is grossly overbroad, irrelevant, and the EEOC has made no showing that it is calculated to lead to the discovery of admissible evidence. Respondent has previously stated that the data requested is not exportable and compliance with the EEOC's request would be unduly burdensome.

**OBJECTIONS TO SECTION I-C**

In Section I-C, the EEOC requests as follows:

> If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions. Please reach out to the investigator to provide details regarding the person most knowledgeable and availability for the interview.

Respondent objects to the EEOC's request to "interview [] the person most knowledgeable about Respondent's BambooHR Applicant Tracking system to discuss "these contentions" for the reasons set forth in response to Section I-B, above.

**OBJECTIONS TO SECTION II -FORMATTING AND TRANSFERRING ELECTRONIC DATA FILES**

In section II, subparts A-D, the EEOC purports to dictate how any data files must be produced including the format, manner of production and definitions. Respondent objects to the production of the requested data for the reasons detailed above and incorporates those objections herein. Respondent further objects to the EEOC's attempt to dictate how data is produced as unreasonable and unduly burdensome.

For each of the reasons addressed in this Petition, Respondent respectfully requests that the Commission revoke the Subpoena and withdraw the Charge.

Respectfully,

T. Matthew Miller

TMM/lmh

BEFORE THE UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE MATTER OF

| | | |
|---|---|---|
| CHARLOTTE A. BURROWS, | : | |
| | : | |
| Charging Party, | : | Subpoena No.: AT-26-007 |
| | : | |
| v. | : | |
| | : | |
| HYUNDAI ENG AMERICA, INC., | : | Charge No.: 410-2025-02613 |
| | : | |
| Respondent. | : | |

PETITIONER

Hyundai ENG America, Inc.
111 Peters Canyon Road
Irvine, CA 92606

PETITIONER'S ATTORNEY

T. Matthew Miller
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203

## DETERMINATION ON PETITION TO REVOKE OR MODIFY SUBPOENA

Pursuant to the provisions of 29 C.F.R. § 1601.16 and Section 24.12 of the EEOC Compliance Manual, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") makes the following determination on the "Petition for Revocation and General Objections to Subpoena by Former Commissioner Burrows" filed by Petitioner Hyundai ENG America, Inc. ("Petitioner").

## I. BACKGROUND

### A. The Charge of Discrimination and Subpoena No. AT-25-043

This is Petitioner's second petition to revoke or modify a subpoena related to Charge of Discrimination 410-2025-02613. Petitioner filed its first petition to revoke or modify a subpoena on May 19, 2025 ("First Petition"), in response to Subpoena No. AT-25-043 (the "First Subpoena"). A detailed procedural history of this Charge of Discrimination and the First Subpoena

can be found in the EEOC's July 8, 2025, determination ("First Determination") on the First Petition. (Exhibit G at 61–75).

The Charge alleges Petitioner has failed or refused to hire or promote non-Korean workers for its operations in Alabama and Georgia in violation of Title VII of the Civil Rights Act of 1964. (Exhibit A).

Petitioner's continued characterization of the Charge as focused on "AI disparate impact" is perplexing and inapt. (Exhibit G, Petition for Revocation at 6). The Charge on its face addresses intentional discriminatory conduct, i.e., disparate treatment. To *fail* or to *refuse* to hire or promote ordinarily implies intentional action. It is unreasonable for Petitioner to infer otherwise from the bare fact that the EEOC's first information request—as part of typical EEOC investigatory processes—sought background context about Petitioner's hiring systems, including whether it employed AI or algorithms. At bottom the charge requires investigating whether Petitioner intentionally and discriminatorily disfavored non-Korean workers in hiring and promotion. The scope of the investigation falls squarely within the President's and Chair Andrea Lucas's shared priority of protecting American workers from unlawful national origin bias.

Despite the clear legitimacy and importance of the Charge, Petitioner has repeatedly sought to curtail the EEOC's investigation. In response to the EEOC's first Request for Information ("First RFI"), Petitioner wrote to the Commission's Acting General Counsel requesting that the Commission withdraw or dismiss the Charge, and that the Commission otherwise stay its investigation. (Exhibit B). Upon receiving the First Subpoena, which sought the information requested in the First RFI, Petitioner filed its First Petition for Revocation, primarily on the bases that former-Chair Burrows lacked "standing" to sustain the Charge and that the EEOC's continued

investigation of the Charge conflicted with the directives of the President of the United States. (Exhibit C).

On July 8, 2025, the Commission denied the First Petition and directed Petitioner to produce information responsive to the First Subpoena. Petitioner complied on August 25, 2025.

B. The EEOC's Second Request for Information and Subpoena No. AT-26-007

On December 15, 2025, EEOC Investigator Trey Pyle issued a second Request for Information ("Second RFI") seeking data Petitioner indicated it maintained about its employees and seeking further information about data Petitioner may maintain about its applicants for employment. (Exhibit D). The information sought in the Second RFI was logically connected to the information Petitioner produced in response to the First RFI and Subpoena. In that first response, Petitioner identified BambooHR as the human resources information system it used for its relevant operations. And Petitioner detailed the data fields it maintained in BambooHR. The Second RFI sought information corresponding to those data fields.

The Second RFI requested a response by January 12, 2026, warning that a failure to produce responsive information may result in the issuance of a subpoena. *See id.* On January 20, 2026, Petitioner indicated to Investigator Pyle that it would not provide a substantive response to the Second RFI. (Exhibit E). Petitioner reiterated its contention that former-Chair Burrows "does not have standing to continue pursuit of the Charge," and contended the Charge is baseless and inconsistent with Executive Order 14281 and the priorities of the President and the Commission. *See id.* Petitioner dismissed the First Determination's response to these arguments, raising, for the first time, that the First Determination was "invalid as a matter of law" because it was not signed by a Commissioner, and because the Commission lacked a quorum at the time of its issuance.[1] *See*

[1] Petitioner squared its belief regarding the invalidity of the First Determination with its ultimate

*id.* Petitioner otherwise raised general objections as to overbroad and unduly burdensome requests propounded by the Second RFI. *See id.*

On February 2, 2026, the EEOC issued Subpoena No. AT-26-007 (the "Second Subpoena") to Juhyun Yun, Petitioner's Chief Executive Officer. The Second Subpoena sought the same information requested by the Second RFI, instructing Petitioner in Section I as follows:

> A. Submit in electronic format, as described below in Section II, the following data as it relates to all current and former employees employed at Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This information includes employees' complete employment history going back to date of hire. For each employee, provide all populated fields in each of the names/files listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.
>
> a. Last name, First name
> b. Self-service access
> c. Employee #
> d. Status
> e. First Name
> f. Middle Name
> g. Last Name
> h. Birth Date
> i. SSN
> j. Citizenship
> k. Nationality
> l. Address Line 1
> m. Address Line 2
> n. City
> o. State
> p. Zip Code
> q. Country
> r. Mobile Phone
> s. Home Phone
> t. Home Email
> u. Visa: Date
> v. Visa
> w. Issuing country
> x. Hire Date

---

compliance with Subpoena No. AT-25-043 by characterizing its compliance as an apparently voluntary "effort to put an end to the baseless pursuit of this orphaned [C]harge." (Exhibit E).

y. Original Hire Date
z. Ethnicity
aa. EEO Job Category
bb. Employment Status: Date
cc. Employment Status
dd. Termination Type
ee. Termination Reason
ff. Pay Schedule
gg. Pay Type
hh. Pay Rate
ii. Job Information: Date
jj. Location
kk. Division
ll. Department
mm. Job Title

B. Respondent indicated in their supplemental response to the January 25, 2025 Request for Information, dated September 9, 2025, that applicant data is unable to be exported in an Excel or similar spreadsheet. If the statement regarding Respondent's inability to export data was made in error, we request that Respondent submit in electronic format, as described below in Section II, the following data as it relates to all applicants who applied to any of Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This includes all applicant history going back to date of application for each application. For each applicant, provide all populated fields in each of the names/fields listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

a. Candidate or Applicant ID
b. Application ID
c. Date Applied
d. Full Name
e. Email Address
f. Home Address
g. Phone Number
h. Position Applied For
i. Division
j. Department
k. Location
l. Current/Former Employee
m. EEO Category
n. Race/Ethnicity
o. National Origin
p. Visa
q. Issuing Country

r. Highest Education Obtained
s. Hire Date
t. Candidate Ranking

C. If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions. Please reach out to the investigator to provide details regarding the person most knowledgeable and availability for the interview.

(Exhibit F) (emphasis in original).

Section II of the Second Subpoena provided software and formatting instructions for any response provided by Petitioner. *See id.* The Second Subpoena called for a response to its requests by February 13, 2026. The EEOC provided a courtesy copy of the Second Subpoena to Petitioner's counsel by email on February 2, 2026. The United States Postal Service delivered the EEOC's certified mailing of the Second Subpoena on February 6, 2026.

C. <u>The Second Petition</u>

Petitioner mailed and emailed the instant petition (the "Second Petition") to the EEOC on February 6, 2026. (Exhibit G). The Second Petition advances three primary arguments for the revocation of the Second Subpoena. First, Petitioner contends that the Second Subpoena is "premature" because the Commission has not acted on its request that the Charge be withdrawn due to former-Chair Burrows's purported lack of standing to continue pursuit of her charge, the change in administration, and the lack of a quorum at the Commission at the time it initially requested the withdrawal of the Charge and the revocation of the First Subpoena. *See id.* Second, Petitioner seeks the Second Subpoena's revocation because the underlying "Charge was issued by a former Commissioner who was terminated by the President of the United States." *Id.* Petitioner thirdly contends that the "requests in the Subpoena are contrary to the directives and initiative of the President of the United States." *Id.* Petitioner otherwise generally objects to the Second Subpoena's requests as overbroad, irrelevant, and unduly burdensome.

## II. ANALYSIS

As noted in the First Determination and discussed below, the EEOC has broad subpoena powers to enable it to gain access to any evidence relevant to a charge of discrimination. *See* 42 U.S.C. § 2000e-8(a). Here, a valid Charge has been filed, and the Subpoena contains all the information required by 29 C.F.R. § 1601.16(a).[2] The information sought in the Second Subpoena is necessary to the investigation of the Charge's claims and to identify individuals whose rights may have been violated in the manner set forth in the Charge. To investigate the Charge's claims and to identify the individuals whose rights may have been violated, the EEOC must review the information sought in the Second Subpoena.

A. The First Determination Was Duly Issued.

As an initial matter, the overarching arguments advanced by Petitioner in its Second Petition are identical to the arguments considered and rejected by the Commission in its First Determination. Indeed, many of the arguments raised in the Second Petition appear to be lifted word-for-word from the First Petition. (Exhibit C; Exhibit G). Petitioner contends that the EEOC should nevertheless reconsider its arguments because, in its view, the First Determination "was invalid as a matter of law" because it was signed by the Director of the EEOC's Office of Field Programs and issued at a time that the Commission lacked a quorum. (Exhibit G). Petitioner appears to contend that the Commission itself must review and issue any determination on a petition to revoke a subpoena, and that the Commission could not have appropriately done so as to the First Determination. Petitioner cites 29 C.F.R. § 1601.16(b)(2), which requires that any

[2] 29 C.F.R. § 1601.16(a) states, in relevant part:

> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested.

proposed determination on a petition be submitted "to the Commission for its review and final determination."

Petitioner does not, however, contend with the Commission's December 31, 2024, order concerning the delegation of Commission authority during the loss of quorum. (Exhibit H). The order, which was in effect at the time of the First Determination, specifically delegated the Commission's authority to issue decisions on petitions to revoke or modify subpoenas to the Director of the Office of Field Programs in the event of a loss of quorum. *See id.* After its loss of quorum on January 28, 2025, the Commission expressly communicated to the public on its website that "the authority to issue a determination following a subpoena challenge was delegated . . . to the director of the Office of Field Programs in December 2024." (Exhibit I). Since regaining a quorum, the Commission has re-affirmed the delegation of its petition decision authority to the Director of the Office of Field Programs in the event of a loss of quorum. (Exhibit J).

As such, there is no basis to conclude that the First Determination was issued in violation of 29 C.F.R. § 1601.16(b)(2). The EEOC duly considered and rejected the arguments raised by Petitioner in its First Determination (Exhibit G at 61–75) that are now advanced again in its Second Petition. Having already duly disposed of Petitioner's structural arguments regarding the Charge of Discrimination and investigation, including its arguments about its request for the Charge's withdrawal, about the removal of then-Chair Burrows, and about the impact of any Executive Orders, the Commission summarily rejects them herein for the reasons stated in the First Determination.

B. <u>The Subpoena's Requests are Relevant to the Charge and Not Overly Broad.</u>

As for the Second Subpoena itself, Petitioner contends that nearly all of its requests are irrelevant and overly broad. Petitioner's contentions are primarily bootstrapped to its general objections to the Charge itself, and they are rejected for the reasons explained in the First

Determination. Moreover, the Second Subpoena's requests are relevant to the Charge and appropriately tailored to its allegations.

The concept of relevancy during an EEOC investigation is broader than during litigation. Title VII broadly grants the EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). "[C]ourts have generously construed the term 'relevant' and have afforded EEOC access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984). To determine the scope of the EEOC's investigative power, "'the scope of the original charge should be liberally construed.'" *EEOC v. Kronos, Inc.*, 620 F.3d 287, 300 (3d Cir. 2010) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978)).

The scope of the Charge is broad—it alleges that Petitioner has failed or refused to hire or promote non-Korean individuals for its operations in the States of Alabama and Georgia. (Exhibit A). The Charge, executed in December 2024, alleges that this practice has been carried out "since at least 2023." (Exhibit A). In other words, the Charge alleges a systemic failure to hire or promote non-Korean individuals in multiple states for multiple years. *See EEOC v. Eberspeacher N. Am. Inc.*, 67 F.4th 1124, 1131 (11th Cir. 2023) (noting, in discussion of relevance as it relates to EEOC subpoenas, that "the EEOC knows how to issue broad charges targeting numerous employment locations when it suspects nationwide employment misconduct and seeks to collect relevant evidence from several employment locations"). Any inquiry into the relevance of the Second Subpoena's requests must examine whether the requests seek what may include virtually any material that might cast light on broad allegations of unlawful hiring and promotion practices by Petitioner in Alabama and Georgia.

The Second Subpoena's requests do so. Section I-A seeks a list of "all current and former employees employed at [Petitioner's] Alabama and Georgia locations during the period of January 1, 2020 to present," specifying particular information needed for each employee. (Exhibit F). Section I-B seeks similar information about job applicants during the same period. A roster of employees and applicants appended with demographic,[3] hiring,[4] and contact information[5] is relevant to a broad allegation of discrimination against non-Korean applicants for employment and promotion. *See EEOC v. AAM Holding Corp.*, 153 F.4th 252, 262 (2d Cir. 2025) (finding that contact and "pedigree information" about an entity's employees over a period spanning several years was relevant to a charge alleging widespread discrimination). Moreover, consistent with the Charge and the First Subpoena, the Second Subpoena cabins its request to focus only on Petitioner's Alabama and Georgia facilities. The Second Subpoena limits its requests to systems concerning individuals who worked for or applied to work for Petitioner on or after January 1, 2020, which is consistent with the Charge's allegation of unlawful practices dating back to "at least 2023."

Petitioner argues that the Second Subpoena's requests for information dating back to January 1, 2020, seeks data about "a period greater than any potential statute of limitations." Petitioner thus contends that the EEOC is not entitled to information about individuals dating back to January 1, 2020, because Petitioner would have a defense to any claims later asserted related to such individuals; yet "the EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987) (citing *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 788 (7th Cir. 1983));

[3] Sections I-A-j, k, u, v, w, z, aa and I-B-m–p.
[4] Sections I-A-b, c, d, x, y, bb, cc, dd, dd, ee, ff, gg, hh and I-B-a, b, c, h, i, j, k, l, r, s, t.
[5] Sections I-A-a, e, f, g, h, i, l, m, n, o, p, q, r, s, t and I-B-d, e, f, g.

*see also EEOC v. Schwan's Home Serv.*, 644 F.3d 742, 747 (8th Cir. 2011) ("a valid defense to a subsequent lawsuit does not prevent an EEOC investigation") (internal citation omitted); *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 42 (6th Cir. 1984) (noting that the administrative subpoena enforcement stage "is not the proper time to litigate the merits of a claim, either procedurally or substantively"). Moreover, even if a statute of limitations would prevent the assertion of a claim for relief on behalf of any individual, their experience may nevertheless serve as competent evidence for evaluating claims of widespread discrimination. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 668 (6th Cir. 1999) ("[E]ven evidence of conduct that is time-barred 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'") (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). *See also EEOC v. Kronos, Inc.*, 620 F.3d 287, 299 (3d Cir. 2010) (rejecting arguments that an EEOC subpoena was temporally overbroad as it pertained to failure-to-hire allegations because "[e]vidence related to the employment practice under investigation prior to and after [the] charge provides valuable context that may assist the EEOC in determining whether discrimination occurred").[6]

As such, all categories of information requested by the Second Subpoena are relevant to the Charge.[7] Petitioner's unadorned conclusions about the relevance of the Second Subpoena's requests are rejected.

---

[6] To the extent which Petitioner objects to the Second Subpoena's request for all information maintained since January 1, 2020, regarding the data fields identified by Section I-A, its objections are well taken as to the contact information sought by Sections I-A-l through I-A-t. In lieu of providing all contact information which may have existed since January 1, 2020, for each listed employee, Petitioner may provide only the last-known contact information of each listed employee.

[7] Petitioner's arguments against Section I-C, which it states are based in the same arguments it advances as to Section I-B, are rejected for the same reasons stated herein as to Section I-B.

C. Petitioner Has Failed to Show that the Second Subpoena Imposes an Undue Burden.

As the producing party, Petitioner bears the burden of demonstrating that compliance with the Second Subpoena would be unduly burdensome. *EEOC v. Children's Hosp. Med. Ctr. Of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983). To meet this standard, Petitioner must show that the cost of compliance with the subpoena is "unduly burdensome in the light of the company's normal operating costs." *EEOC v. Md. Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986). A showing of undue burden requires the respondent to produce evidence, such as through affidavit testimony, demonstrating how compliance with the subpoena would unduly burden the employer. *See EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981).

Petitioner has not explained how the Second Subpoena imposes an undue burden in light of its normal operating costs or procedures, nor has it submitted competent evidence of the same. Petitioner provides no argument as to how a subpoena seeking the exporting of data it has admitted to possessing—with an option to produce a witness for questioning regarding any data it cannot export—unduly burdens its operations. Petitioner's characterization of the investigation and the Second Subpoena as a "fishing expedition" does not suffice as an argument that the Second Subpoena itself is unduly burdensome. Nor does Petitioner's casting of Section II's instructions related to the formatting of its response as an improper "attempt to dictate how data is produced" establish undue burden. *See EEOC v. Bashas', Inc.*, 828 F. Supp. 1056, 1071 (D. Ariz. 2011) (finding that an EEOC subpoena providing a recipient with the option to produce responsive data in "Excel, Access, or ASCII" format was not unduly burdensome by reason of its formatting instruction). In the absence of a showing that the Second Subpoena's requests would be unduly burdensome, Petitioner's arguments are rejected.[8]

---

[8] Although Petitioner has not raised any argument on the matter, the Commission *sua sponte*

## III. DETERMINATION

Accordingly, the Petition for Revocation and General Objections to Subpoena AT-26-007 is GRANTED IN PART as described herein as to Sections I-A-l through I-A-t; Petitioner may provide the last-known contact information of each listed employee in response to Sections I-A-l through I-A-t. The Petition is DENIED as to the remainder of the Second Subpoena. Petitioner shall produce the information sought by Subpoena No. AT-26-007 within thirty (30) days of its receipt of this Determination.

ON BEHALF OF THE COMMISSION:

RAYMOND WINDMILLER Digitally signed by RAYMOND WINDMILLER Date: 2026.05.11 17:28:06 -04'00'

DATED: May 11, 2026

Raymond Windmiller
Executive Officer
Executive Secretariat

---

exercises its discretion to reduce any burden imposed by the Subpoena by permitting Petitioner to forego, for now, any response to the requests made in Sections I-A-j, u, v, and w and I-B-p and q of the Subpoena. These requests seek information which, in many circumstances, can reasonably be gleaned from the information sought in Sections I-A-k and z and I-B-n and o of the Subpoena. To the extent which the information sought in Sections I-A-j, u, v, and w and I-B-p and q proves to be necessary to the continued investigation of the underlying Charge of Discrimination, however, the Commission reserves the right to enforce the requests.

**T. Matthew Miller**
Partner
mmiller@bradley.com
205.521.8243 direct
205.218.5047 cell
205.488.6243 fax

**Bradley**

June 11, 2026

**VIA ELECTRONIC MAIL and U.S. MAIL**
Trey Andrew Pyle
Senior Federal Investigator
EEOC – Atlanta District Office
100 Alabama Street SW, Suite 4r30
Atlanta, GA 30303
Trey.Pyle@eeoc.gov

RE: *Charlotte A. Burrows v. Hyundai ENG America, Inc.*
EEOC Charge No. 410-2025-02613
Response to Second Administrative Subpoena

Investigator Pyle:

Without waiving any of its objections or grounds for revocation as set out in its "Revised Petition for Revocation and Objections to Administrative Subpoena by Former Commissioner Burrows" dated February 9, 2026 (the "Petition"), Respondent Hyundai ENG America, Inc. ("Respondent") provides the following responses to the EEOC's second subpoena, dated February 2, 2026 (the "Second Subpoena," included as Attachment A).

## I. SECTION I – "Electronic Data Requested"

Respondent restates the objections and grounds for revocation of the Second Subpoena contained in its Petition, including but not limited to its objection that the Second Subpoena is overly broad, unduly burdensome, vague, and comprises a "fishing expedition." Subject to these objections and grounds for revocation and the additional objections below, Respondent responds as follows to the individual requests in the Second Subpoena:

### A. Section I(A) – Requesting All Employee Data from January 2020 to Present

*The Commission's Request*: In Section I(A), the EEOC seeks a laundry list of information for every employee of Respondent in Georgia or Alabama from January 1, 2020, to present. Specifically, the request originally sought, "[f]or each employee, [] all populated fields in each of the names/files listed below from the BambooHR system," including:

a. Last name, First name
b. Self-service access
c. Employee #
d. Status
e. First Name

f. Middle Name
g. Last Name
h. Birth Date
i. SSN
j. Citizenship
k. Nationality
l. Address Line 1
m. Address Line 2
n. City
o. State
p. Zip Code
q. Country
r. Mobile Phone
s. Home Phone
t. Home Email
u. Visa: Date
v. Visa
w. Issuing country
x. Hire Date
y. Original Hire Date
z. Ethnicity
aa. EEO Job Category
bb. Employment Status: Date
cc. Employment Status
dd. Termination Type
ee. Termination Reason
ff. Pay Schedule
gg. Pay Type
hh. Pay Rate

For items (l) through (t), the EEOC has stated in response to the Petition that Respondent "may provide the last-known contact information of each listed employee."

*Respondent's Objections*: This request for information for all employees from January 2020 to present is overly broad, unduly burdensome, and not proportional to the needs of the Charge, which alleges a belief of national origin discrimination in hiring and promotion decisions ***since 2023***. Information dating back roughly six-and-a-half years is not within the period explicitly contemplated by the Charge and is outside the potential statute of limitations under Title VII. Additionally, several items requested are not relevant to national origin, hiring, or promotions, including employee number, date of birth, social security number, termination type, termination reason, pay type, and pay rate. Respondent also objects to this request as vague to the extent it seeks each employee's "self-service access," "EEO job category," "employment status: date," "pay schedule," and "visa." Respondent cannot decipher what is requested in these items.

Subject to these objections, the following items remain: Name, citizenship, nationality, last known contact information, date and issuing country of any visa, hire date(s), ethnicity, and

employment status (the "Relevant Items"). Respondent has two divisions in Alabama and Georgia —Construction and Facilities Management—and each runs its own BambooHR system, has separate access permissions in BambooHR, and tracks different information in BambooHR. Therefore, the information available depends on the division at issue, whether BambooHR tracks or contains a particular Relevant Item, and whether Respondent received the particular information from an employee or applicant.

*Production*: Contemporaneously with this response, Respondent is producing the Relevant Items it can export from BambooHR for employees in Alabama and Georgia from January 1, 2023, to present. Respondent is producing two spreadsheets (One for Construction and one for Facilities) containing the available Relevant Items for each employee that each respective division tracks in BambooHR. For reference, Facilities Management, unlike Construction, does not track citizenship or nationality and neither division's BambooHR contains date and issuing country of visas.

### B. Section I(B) – Requesting All Applicant Data from January 2020 to Present

*The Commission's Request*: In Section I(B), the EEOC seeks a confirmation of whether BambooHR information for job applicants can be "exported in an Excel or similar spreadsheet." If it can be so exported, the EEOC seeks a list of information for "all applicants who applied to any of Respondent's Alabama and Georgia locations" from January 1, 2020, to present. Specifically, the request seeks, "[f]or each employee, [] all populated fields in each of the names/files listed below from the BambooHR system," including:

a. Candidate or Applicant ID
b. Application ID
c. Date Applied
d. Full Name
e. Email Address
f. Home Address
g. Phone Number
h. Position Applied For
i. Division
j. Department
k. Location
l. Current/Former Employee
m. EEO Category
n. Race/Ethnicity
o. National Origin
p. Visa
q. Issuing Country
r. Highest Education Obtained
s. Hire Date
t. Candidate Ranking

*Respondent's Objections*: Respondent is continuing to investigate the feasibility of exporting BambooHR applicant data (in contrast to the employee data provided in response to

Request I(A)) via Excel spreadsheet or similar format. Respondent's BambooHR platform does not appear to provide a means to export all applicants for a specified period in a single report or based on a single query. Instead, Respondent is currently aware of only one option for exporting applicant data—a burdensome manual process of individually accessing each online job posting and then accessing and running a report for the applicants for that particular posting and position. Stated differently, Respondent's only currently discovered avenue for providing the information requested is to access data on a job posting-by-job posting basis. As a result, it appears that compiling a complete applicant dataset for multiple years can only be accomplished through a burdensome manual effort to locate, access, export, and consolidate the information. Respondent is investigating the feasibility of running such reports and other options for obtaining the requested data.

If Respondent is able to export BambooHR applicant data in a way that is not unduly burdensome, it objects to providing information for applicants prior to January 2023 for the reasons stated above in its objections to Request I(A). Additionally, there does not appear to be a legitimate basis for requiring production of applicant data for positions filled by non-Korean individuals. The Charge alleges only discrimination against "non-Korean individuals." Therefore, positions filled by non-Korean individuals are not at issue, and requiring Respondent to produce such information would be unduly burdensome and not proportional to the Charge. This request is also vague to the extent it seeks each employee's "Candidate or Applicant ID" (as opposed to each applicant's name, requested in another item), "Application ID," "EEO Category," "Visa," and "Candidate Ranking." Respondent cannot decipher what is requested in these items.

Subject to these objections, the following items remain: Applicant name, date of application, position applied for, last known contact information,[1] employment status, national origin, race/ethnicity, issuing country of any visa, and hire date (if any) (the "Applicant Relevant Items").This assumes that (1) BambooHR for both divisions (Construction and Facilities Management) tracks or contains the Relevant Items, and (2) that Respondent received each Applicant Relevant Item from each applicant.

*Production*: Respondent is currently investigating whether BambooHR contains the Applicant Relevant Items and, as explained above, whether it can export the same for each applicant over several years without undue burden. Subject to that investigation and without waiving the above objections, Respondent will produce the Applicant Relevant Items it can export from BambooHR without undue burden for applicants to positions filled by Korean individuals in Alabama and Geogia from January 1, 2023, to present.

**C. Section I(C) – Requesting Interview**

In Section I(C), the EEOC states: "If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions." As explained in response to Request I(B) above, Respondent is actively investigating

[1] Regarding Request I(A) above, the Commission stated that Respondent "may provide the last-known contact information of each listed employee" in lieu of other information. Respondent presumes this guidance also applies for its response to items (e) through (g) in this Request I(B).

the feasibility and burden of accessing and exporting applicant data. Upon conclusion of that investigation, Respondent will either provide information as outlined in response to Section I(B) or, in the event it is unable to do so, coordinate with the EEOC regarding an interview.

## II. SECTION II – "Formatting and Transferring Electronic Data Files"

Section II does not include a request for information but instead contains various formatting and logistical guidelines for submitting the requested data and information. It does not, therefore, require a response. Respondent will provide data in a manner consistent with Federal Rule of Civil Procedure 34(b)(2)(E) and within the capabilities afforded by its BambooHR software.

Respectfully,

T. Matthew Miller

TMM/syv

# EXHIBIT A

EEOC Form 136
(11/09)

# UNITED STATES OF AMERICA
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# SUBPOENA

TO: Juhyun Yun
Chief Executive Officer
Hyundai ENG America, Inc.
111 Peters Canyon Road
Irvine, California 92606

NO: AT-26-007

IN THE MATTER OF: Charlotte A. Burrows v. Hyundai ENG America, Inc.

Charge No. 410-2025-02613

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

☐ Testify before: ☒ Produce and bring * or ☒ Mail * the documents described below to:

☐ Produce access to the evidence described below for the purpose of examination or copying to:

Trey Andrew Pyle, Senior Federal Investigator of the Equal Employment Opportunity Commission

at 100 Alabama Street SW, Suite 4R30, Atlanta, GA 30303 on February 13, 2026 at 5:00pm o'clock

The evidence required is

Section I – Electronic Data Requested

A. Submit in electronic format, as described below in Section II, the following data as it relates to all current and former employees employed at Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This information includes employees' complete employment history going back to date of hire. For each employee, provide all populated fields in each of the names/files listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

a. Last name, First name
b. Self-service access
c. Employee #

CONTINUED ON PAGE 3 of Form 136

This subpoena is issued pursuant ☒ (Title VII) 42 U.S.C. 2000e-9 ☐ (ADEA) 29 U.S.C. 626(a) ☐ (EPA) 29 U.S.C. 209 ☐ (ADA) 42 U.S.C. 12117(a) ☐ (GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)
Darrell E. Graham, District Director
EEOC - Atlanta District Office
100 Alabama Street SW
Suite 4R30
Atlanta, GA 30303

ON BEHALF OF THE COMMISSION

Darrell E. Graham Digitally signed by Darrell E. Graham Date: 2026.02.02 09:18:23 -05'00'

Date

*NOTICE TO PERSON SUBPOENAED - The Commission will not pay witness fees or travel expenses for the delivery of required documents to a Commission office unless the box "Testify before" is also checked on the subpoena.

# SUBPOENA

## PROOF OF SERVICE

I hereby certify that being over 18 years of age and not a party to or any way interested in these proceedings, I duly served a copy of the subpoena on the persons named in this subpoena.

☐ in person

☐ by certified mail

☐ by leaving a copy with a responsible person, at the principal office or place of business, to wit:

Name ________________________________

Position ________________________________

Address ________________________________

On ________________________________

*(Mo, day & year)*

________________________________

*(Signature of person making service)*

________________________________

*(Official title, if any)*

State ________________________________

Parish/ County ________________________________

## CERTIFICATION OF ATTENDANCE

I certify that the person named herein was in attendance and satisfactorily produced the records requested or gave oral testimony at

________________________________

On ________________________________

*(Mo, day & year)*

________________________________

*(Signature of person making service)*

________________________________

*(Official title, if any)*

SUBPOENA

Attachment to Subpoena AT-26-007 Dated ______________ in Charge No. 410-2025-02613

d. Status
e. First Name
f. Middle Name
g. Last Name
h. Birth Date
i. SSN
j. Citizenship
k. Nationality
l. Address Line 1
m. Address Line 2
n. City
o. State
p. Zip Code
q. Country
r. Mobile Phone
s. Home Phone
t. Home Email
u. Visa: Date
v. Visa
w. Issuing country
x. Hire Date
y. Original Hire Date
z. Ethnicity
aa. EEO Job Category
bb. Employment Status: Date
cc. Employment Status
dd. Termination Type
ee. Termination Reason
ff. Pay Schedule
gg. Pay Type
hh. Pay Rate

CONTINUED ON PAGE 4 of Form 136

On Behalf of the Commission:

Darrell E. Graham Digitally signed by Darrell E. Graham Date: 2026.02.02 09:18:49 -05'00'

District Director Date

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated _______ in Charge No: 410-2025-02613

B. Respondent indicated in their supplemental response to the January 25, 2025 Request for Information, dated September 9, 2025, that applicant data is unable to be exported in an Excel or similar spreadsheet. If the statement regarding Respondent's inability to export data was made in error, we request that Respondent submit in electronic format, as described below in Section II, the following data as it relates to all applicants who applied to any of Respondent's Alabama and Georgia locations during the period of January 1, 2020 to present. This includes *all applicant history going back to date of application for each application.* For each applicant, provide all populated fields in each of the names/fields listed below from the BambooHR system. If Respondent does not maintain populated data in any of the tables or fields listed below, please indicate this in writing in your response and provide the requested data from the data table and field in which it resides.

a. Candidate or Applicant ID
b. Application ID
c. Date Applied
d. Full Name
e. Email Address
f. Home Address
g. Phone Number
h. Position Applied For
i. Division
j. Department
k. Location
l. Current/Former Employee
m. EEO Category
n. Race/Ethnicity
o. National Origin
p. Visa
q. Issuing Country
r. Highest Education Obtained
s. Hire Date
t. Candidate Ranking

C. If Respondent maintains the claim that they are unable to export applicant data, the Commission requests an interview with the person most knowledgeable about Respondent's BambooHR Applicant Tracking System to discuss these contentions. Please reach out to the investigator to provide details regarding the person most knowledgeable and availability for the interview.

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated ________ in Charge No: 410-2025-02613

**Section II – Formatting and Transferring Electronic Data Files**

**A. Data File Format**

The requested data should be extracted into one of the following file formats: Microsoft Excel, Microsoft Access, or ASCII comma delimited ("csv"). Other formats may be acceptable if approved prior to submission to the EEOC. Please contact me for assistance if you cannot provide data in one of the requested formats.

**B. Field Names and Unique identifiers**

Each field requested above should be provided in a unique column. The EEOC requests that the first row of each data file (or Excel worksheet or Access table) consists of the field names.

It is required that each data file (or worksheet or table) contain a unique identifier for each person or individual represented in the data. The unique identifier should allow information about individuals to be linked across files, tables, and software systems. While Social Security Number is a common unique identifier, EEOC's preference is to have another identifier if it exists. That is, as an extra guard to protect the confidentiality/privacy of individuals in the data, EEOC prefers not to receive Social Security Numbers if alternative unique identifiers (such as employee, applicant, or badge numbers) are available. Each data table produced containing information about individuals must include an employee ID and applicant ID, where applicable, unless the Respondent can specify some other unique and consistent identifiers for these purposes. If a unique identifier does not already exist that links candidate/applicant data to employee data, as well as any other applicant tracking system or human resource information systems used, you are required to assign a unique identifier for the same person in all the tables.

**C. Field and Code Definitions**

For each data file (or worksheet or table) produced, provide a list of definitions for each field or variable included. Also provide a list of all possible code values and definitions for each field or variable that contains a code to capture individual information (for example, a field SEX may include codes "M" or "1" for male and "F" or "2" for female). Field and code definitions should be provided in Microsoft Excel or Word readable format.

**D. Data Transfer**

Protecting the confidentiality and privacy of individuals and employers in the data is of utmost importance to the EEOC. The safest and securest way to transfer sensitive personally identifiable information (SPII) data to EEOC is to transfer via the EEOC's Respondent Portal. *Do not email data to the EEOC. This is not a secure method of data transfer.* If data transfer is not possible through the Respondent Portal, please contact the assigned investigator to discuss alternative options for data transfer.

**SUBPOENA**

Attachment to Subpoena AT-26-007 Dated _______ in Charge No: 410-2025-02613

**Transferring data via the Respondent Portal**

Include a written transmittal memorandum that includes the following:

a. Who is sending the data, who is to receive the data, and the reason that the data is being transmitted, and
b. A description of the contents including the names of each database file, the number of bytes contained in each file, and a log of any queries used to export or import the data.

Log in to the EEOC Respondent Portal at: https://nxg.eeoc.gov/rsp/login.jsf

- Provide the Charge Number.
- Provide Password.
    - If you forgot your password, click on the "change password" or "forgot password" button in the log in window. Once you have done this, it will take you to the next window where you must fill out all the form fields and submit them by selecting the "change password" button. Keep in mind, the "forgot password" link will only work if the email entered matches the contact email for that case. If you need further assistance, please contact the helpdesk at 800-569-7118 or via email at digitalsupport@eeoc.gov.

When you are in the Respondent Portal:

- Provide or verify Organization Contact Information.
- Click the "Upload Documents" button under Charge Documents in the right panel.
- Choose the file(s) to upload.
- If the data contain SPII or a file is larger than 50 MB, select the "Sensitive Data Set" File Type (examples of SPII include: Name, Social Security Number, Driver's License, Financial Account or Credit/Debit Account Number, medical information).
- If the data contain SPII, check the "SPII" checkbox.
- If the data contain SPII, check the types of SPII information that the data contain.
- Click the "Save Upload" button.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Atlanta Direct Dial: (470) 531-4760
FAX (404) 562-6909/6910
Website: www.eeoc.gov

*VIA RESPONDENT PORTAL UPLOAD & EMAIL*
June 30, 2026

Hyundai ENG America, Inc.
c/o T. Matthew Miller
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

| | | |
|---|---|---|
| RE: | EEOC Charge Number: | 410-2025-02613 |
| | Charging Parties: | Charlotte Burrows |
| | Respondent: | Hyundai ENG America, Inc. |

Dear Mr. Miller:

The U.S. Equal Employment Opportunity Commission ("Commission" or "EEOC") thanks you for Hyundai ENG America's ("Respondent") response to our most recent request for information, submitted originally on December 15, 2025, and then again by subpoena on February 2, 2026. This letter addresses deficiencies in the response submitted by Respondent on June 15, 2026, and requests additional information responsive to said deficiencies.

As stated in the Commission's Determination on Petition to Revoke or Modify Subpoena, dated May 11, 2026, "**all categories of information requested by the Second Subpoena are relevant to the Charge**." Only one petition for revocation or modification was granted in part, that being that Respondent may provide the last-known contact information of each listed employee in response to the relevant sections.

However, Respondent's response to the second subpoena is severely deficient. Respondent ignores the clearly stated temporal scope of the investigation, January 1, 2020, to present, and instead substitutes their own from January 1, 2023, to present. Respondent objects to providing information on fields pertaining to applicant data in their BambooHR system, instead responding to a limited set of items. In fact, the information provided by Respondent is so limited that the Commission is unable to conduct any meaningful investigative analysis.

Therefore, Respondent is hereby requested to submit information and records required by the Commission to investigate the subject charge of discrimination. The Commission is requesting the following, based on the contents of the second subpoena:

## I. Section I – Electronic Data Requested

A. **Requesting All Employee Data from January 2020 to Present:** Respondent states that "several items requested are not relevant to national origin, hiring, or promotions, including

employee number, date of birth, social security number, termination type, termination reason, pay type, and pay rate." Respondent also objected to the request as "vague" regarding an employee's "self-service access, EEO job category, employment status: date, pay schedule, and visa."

These items come directly from Respondent's response to the Commission's first request for information, then subpoena, submitted on or around August 25, 2025. For example, the item "self-service access" is listed in 'Exhibit 1 – HEA Subpoena Response BambooHR data fields (HEA 001),' specifically column b, row 2 of the spreadsheet. Again, this information was provided by Respondent; Respondent cannot simultaneously claim that they do not understand what the Commission has requested when it was Respondent who informed us about what data fields they maintain. The listed fields are all necessary for meaningful investigative analysis.

The Commission also refers Respondent to Section II (B) of the second subpoena, where it clearly states that the EEOC prefers to have unique identifiers that "allow information about individuals to be linked across files, tables, and **software systems**." Additionally, the request states that "each data table produced containing information about individuals **must include an employee ID and applicant ID, where applicable**."

The Commission reiterates its request for all fields listed in Section I(A), keeping in consideration the partial modification granted to Respondent by the Commission. As stated in the Determination on Petition to Revoke or Modify Subpoena, in lieu of providing all contact information which may have existed since January 1, 2020, for each listed employee, Respondent may provide only the last-known contact information of each listed employee.

B. **Requesting All Applicant Data from January 2020 to Present:** Respondent states that they are investigating the "feasibility of exporting BambooHR applicant data via Excel spreadsheet or similar format." Respondent objects to production of applicant data for positions filled by non-Korean individuals, stating that "positions filled by non-Korean individuals are not at issue, and requiring Respondent to produce such information would be unduly burdensome and not proportional to the charge."

The Commission emphasizes that it requires *all* applicant data, not just data for positions filled by Korean individuals. The Commission cannot conduct meaningful data analysis with a limited pool of applicants, as this incomplete set of data lacks comparators to determine how many positions were filled by Koreans v. non-Koreans. Assessing one population alone without comparators would be counterproductive and nonsensical.

Respondent also fails to provide any reasonable timeline for providing the missing exported applicant data, stating vaguely that it will "produce" this information at an indeterminate point in the future.

This is the Commission's final attempt to collect this information prior to an enforcement action in federal court. Failure to follow the instructions contained herein or providing an evasive or

incomplete answer will constitute a failure to respond and **may result in a subpoena enforcement action**.

Please provide the requested information on or before **July 14, 2026**.

This request does not necessarily represent the entire body of evidence which we will need to obtain from your organization in order that a proper determination as to the merits of the charges can be made.

EEOC Regulations, 29 C.F.R. §1602.14, requires that all records[1] relevant to this charge be preserved until final disposition of the charge, as defined in §1602.14. Also, that 18 U.S.C. §1001 provides felony criminal penalties for false, fictitious or fraudulent statements or representations, or concealment or cover up of material facts or making or using a false document, in any manner within the jurisdiction of any agency of the United States. The requested information will only be disclosed in accordance with 29 C.F.R. §1601.22, or otherwise made public if the charge results in litigation.

Upon receipt of this letter, please contact the undersigned EEOC Investigator if there are any questions concerning this request for information.

Thank you for your anticipated cooperation in this matter.

Sincerely,

Trey Andrew Pyle
Senior Federal Investigator

**T. Matthew Miller**
Partner
mmiller@bradley.com
205.521.8243 direct
205.218.5047 cell
205.488.6243 fax

Bradley

July 20, 2026

**VIA ELECTRONIC MAIL and U.S. MAIL**

Trey Andrew Pyle
Senior Federal Investigator
EEOC – Atlanta District Office
100 Alabama Street SW, Suite 4r30
Atlanta, GA 30303
Trey.Pyle@eeoc.gov

RE: *Charlotte A. Burrows v. Hyundai ENG America, Inc.*
EEOC Charge No. 410-2025-02613
Supplemental Response to Second Administrative Subpoena

Dear Investigator Pyle:

Respondent Hyundai ENG America, Inc. ("Respondent") provides the following supplemental responses to the EEOC's second subpoena, dated February 2, 2026 (the "Second Subpoena," included as Attachment A).

Respondent provided initial responses to the Second Subpoena on June 11, 2026 (the "Initial Responses," included as Attachment B). On June 30, 2026, you sent a letter requesting additional information, which these supplemental responses address.

Respondent makes these supplemental responses without waiving any of its objections in its Initial Responses, as well as its objections or grounds for revocation as set out in its February 9, 2026 petition for revocation and objections to the Second Subpoena.

## I. SECTION I – "Electronic Data Requested"

### A. Section I(A) – Requesting All Employee Data from January 2020 to Present

In Section I(A) of the Second Subpoena, the EEOC seeks thirty-four different data fields for every employee of Respondent in Georgia or Alabama from January 1, 2020, to present. Specifically, the request seeks "[f]or each employee, [] all populated fields in each of the names/files listed below from the BambooHR system." In its Initial Responses, Respondent objected to certain data fields as overbroad and irrelevant to the charge, which alleges only a belief of national origin discrimination in hiring and promotions since 2023. For example, Respondent objected to production of employees' employee numbers, dates of birth, social security numbers, termination type, termination reason, pay type and pay rates. Respondent also objected to some of the data fields as vague. Finally, Respondent objected to providing data for all employees from January 1, 2020 to present, as the charge alleges a belief of discrimination since 2023.

Respondent nonetheless produced all relevant data it could export from BambooHR for employees in Alabama and Georgia from January 1, 2023, to present. Respondent produced this data in two spreadsheets—one for the Construction division and one for the Facilities Management division—each containing the relevant data that the division tracks.

Your June 30 letter takes issue with three objections made by Respondent. First, regarding Respondent's objection that certain data fields are not relevant to the charge, you state that "[t]he listed fields are all necessary for meaningful investigative analysis." However, the only field you specifically justify is employee ID, which you explain would help track employees across systems. The supplemental data now includes employee IDs. Second, you state that the list of thirty-four data fields was taken from Respondent's own previous statements regarding what fields may be available in BambooHR; thus, Respondent cannot now claim that the fields are vague. The supplemental data we are providing contains data from all available fields that the Commission has requested (except as noted below). Finally, regarding the time scope, you state that Respondent "ignores the clearly stated temporal scope of the investigation, January 1, 2020, to present." But an investigation cannot reach further back in time than the charge it serves, and the charge alleges only a belief of potential discrimination since 2023. Data predating 2023 is therefore beyond the scope of the charge.

With this supplemental response, Respondent is providing the additional requested data fields it can export from BambooHR for employees in Alabama and Georgia from January 1, 2023, to present. The data is contained in two spreadsheets (one for Construction and one for Facilities Management) and includes all requested data fields Respondent tracks for employees,[1] other than the following non-relevant data: dates of birth, termination reason, pay type, pay schedule, and pay rate. To protect personal information, Respondent has redacted the first five digits from social security numbers.

As noted previously, the list of fields we provided at the EEOC's request are *potential* fields in BambooHR, but Respondent does not use all of the potential data fields. For example, Facilities Management's BambooHR system, unlike Construction, does not track citizenship or nationality, and neither division's BambooHR appears to track date or issuing country of visas.

### B. Section I(B) – Requesting All Applicant Data from January 2020 to Present

In Section I(B) of the Second Subpoena, the EEOC seeks a confirmation of whether BambooHR information for job applicants can be "exported in an Excel or similar spreadsheet." If it can be so exported, the EEOC seeks a list of information for "all applicants who applied to any of Respondent's Alabama and Georgia locations" from January 1, 2020, to present. Specifically, the request seeks, "[f]or each applicant, [] all populated fields in each of the names/files listed below from the BambooHR system," including twenty different data fields for each applicant.

In its Initial Responses, Respondent explained that it was investigating the feasibility of exporting BambooHR *applicant* data (in contrast to the employee data provided in response to

[1] For items (l) through (t), the EEOC has stated in response to the Petition that Respondent "may provide the last-known contact information of each listed employee."

Request I(A)) via Excel spreadsheet or similar format. Respondent also explained that, subject to that investigation, it would produce non-objectionable data fields it could export from BambooHR for applicants to positions filled by Korean individuals in Alabama and Georgia from January 1, 2023, to present.

After multiple attempts, Respondent has determined a means to export BambooHR applicant data and is now producing the requested applicant data for all applicants to Alabama and Georgia positions from January 1, 2023, to present. Although Respondent maintains that positions filled by non-Korean individuals cannot be at issue, we are providing applicant data for those positions also.

To aid the Commission in the review of this applicant data, Respondent provides the following information:

i. As explained in response to Section I(A), Respondent's two divisions in Alabama and Georgia—Construction and Facilities Management—each have separate BambooHR systems and track different information in BambooHR. Therefore, the applicant information available depends on the division at issue, whether the division tracks a particular data field, and whether Respondent received the particular information from an applicant.

ii. Applicants for each position are displayed as either "Active" or "Inactive." Respondent is providing both an "Active" spreadsheet and an "Inactive" spreadsheet for each position. As a general matter, "Active" applicants are those whose applications moved forward in the applicant process or who remain active in the system due to no action being taken as to their application. "Inactive" applicants are those who are not "Active."

iii. The applicant data for the Construction division is set out in four "Active" spreadsheets and four corresponding "Inactive" spreadsheets.

iv. The applicant data for the Facilities Management division is set out in one "Active" spreadsheet and one corresponding "Inactive" spreadsheet.

v. Positions for which there were no applications have no applicants listed in either the "Active" spreadsheet or corresponding "Inactive" spreadsheet.

vi. In line with item (i) above, please note that Respondent does not track through BambooHR applicants' races, ethnicities, national origins, highest education obtained, candidate rankings, or hire dates.

Respectfully,

T. Matthew Miller

TMM/syv